WESLEY G. OUCHI; SBN 297187
    E-Mail: w.ouchi@OuchiLawFirm.com
**THE OUCHI LAW FIRM, A.P.C.**
153 E. Walnut St., Suite A
Pasadena, CA 91103
Telephone: (213) 280-4330
Fax: (626) 440-9594

Attorney for Ryan Vintch

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **RYAN VINTCH, an Individual,**<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF LOS ANGELES, a Municipal Entity, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOES 1 through 10, Inclusive,**<br><br>Defendants. | **CASE NO.: 2:20-CV-7932-MWF (PLAx)**<br><br>*[Hon. Michael W. Fitzgerald, Ct. Rm. 5A]*<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>**GROUNDS FOR RELIEF:**<br><br>1. **Denial of Prompt Medical Care (42 U.S.C. § 1983)**<br>2. **Failure to Protect (42 U.S.C. § 1983)**<br>3. **Municipal and Supervisorial Liability (42 U.S.C. § 1983)**<br>4. **Intentional Infliction of Emotional Distress**<br>5. **Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

1
SECOND AMENDED COMPLAINT

## SECOND AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, RYAN VINTCH, an individual, alleging this First Amended Complaint for Damages, against Defendant, COUNTY OF LOS ANGELES, and Defendants, DOES 1 through 10, as follows:

## JURISDICTION AND VENUE

1.  The Court has original jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) through (4), as Plaintiff, RYAN VINTCH, asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983, and the Fourteenth Amendment to the Constitution of the United States.

2.  This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of California, pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the Constitution of the United States.

3.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because Defendants, COUNTY OF LOS ANGELES, and DOES 1 through 10, all reside in this District, while any and all incidents, events, and occurrences, giving rise to the Causes of Action, contained herein this Complaint for Damages, had occurred within this District.

2
SECOND AMENDED COMPLAINT

## COMPLIANCE WITH THE TORT CLAIMS ACT

4.  The events that are subject to this Complaint had occurred between the dates of November 2, 2020 to November 5, 2020.

5.  On February 3, 2020, Plaintiff filed a timely government tort claim with the COUNTY OF LOS ANGELES.

6.  On March 3, 2020, Plaintiff's government tort claim was rejected by the COUNTY OF LOS ANGELES.

7.  Plaintiff hereby files this Complaint alleging state causes of action within the applicable six (6) month deadline.

## COMPLIANCE WITH THE PLRA

8.  At the time that this Complaint is being filed, Plaintiff is no longer detained nor in the custody of the COUNTY OF LOS ANGELES.

9.  Specifically, on May 1, 2020, Plaintiff was released, as a pretrial detainee, from the custody of the Men's Central Jail, in the COUNTY OF LOS ANGELES.

10.  Nevertheless, on November 8, 2019, when Plaintiff was detained as a pretrial detainee, he filed a timely prison grievance while at the Men's Central Jail.

11.  On December 4, 2019, Plaintiff's prison grievance was ultimately "sustained" by the reviewing supervisor(s).

3
SECOND AMENDED COMPLAINT

## **PARTIES AND RELEVANT ACTORS**

12.  Plaintiff, RYAN VINTCH, is an individual residing in the COUNTY OF LOS ANGELES, California.

13.  At all relevant times, Defendant, COUNTY OF LOS ANGELES, was a municipal corporation, which exists under the Laws of the State of California, and was the employer of Defendants, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOES 1 through 10, who were jailers, deputies, staff, nurses, and medical personnel, and is liable for their actions under section 815.2 of the Government Code.

14.  At all relevant times, Defendants, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and SHRONDA MAYBERRY were agents and employees of Defendant, COUNTY OF LOS ANGELES, acting within the course and scope of such agency and employment, under "color of state law."  Said Defendants are statutorily liable under California law pursuant to California Government Code section 820.

15.  On information and belief, at all relevant times, Defendants, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and SHRONDA MAYBERRY were residents of the COUNTY OF LOS ANGELES, California,

and are sued in their individual capacities, as defined in the present First Amended

Complaint for Damages.

16. At all relevant times, Defendants, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and SHRONDA MAYBERRY were duly appointed employees or agents of Defendant, COUNTY OF LOS ANGELES, subject to oversight and supervision by the COUNTY OF LOS ANGELES's elected and non-elected officials.

17. At all relevant times, Defendants, DOES 1 through 10, were agents and employees of Defendant, COUNTY OF LOS ANGELES, acting within the course and scope of such agency and employment, under "color of state law."  Said Defendants are statutorily liable under California law pursuant to California Government Code section 820.

18. On information and belief, at all relevant times, Defendants, DOES 1 through 10, were residents of the COUNTY OF LOS ANGELES, California, and are sued in their individual capacities, as defined in the present Second Amended Complaint for Damages.

19. At all relevant times, Defendants, DOES 1 through 10, were duly appointed employees or agents of Defendant, COUNTY OF LOS ANGELES,

subject to oversight and supervision by the COUNTY OF LOS ANGELES's elected and non-elected officials.

20.  At this time, the true names and capacities of Defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendants, DOES 1 through 10, by such fictitious names.

21.  Plaintiff will seek leave to amend this Complaint to show the true names and capacities of these Defendants, DOES 1 through 10, when they have been ascertained.

## FACTS COMMON TO ALL COUNTS

22.  Between July 9, 2019 and May 1, 2020, Plaintiff, RYAN VINTCH, was held as a pretrial detainee at the Men's Central Jail, by the COUNTY OF LOS ANGELES, on the 2000 cell block, when this incident occurred.

23.  Plaintiff is a twenty-two (22) year old, 5'7, white male, with several diagnosed learning disabilities, severe receptive and expressive language processing disorder, dyslexia, ADHD, superior mesenteric artery syndrome, severe asthma and bronchitis, and a hiatal chest hernia, which he has coped with for all or most of his life.

6
SECOND AMENDED COMPLAINT

24.  Because of these health concerns, Plaintiff has come to significantly depend on the guidance and advice of his Mother, with whom he has always shared an especially close bond and attachment.

25.  However, due to being detained, at the Men's Central Jail, it was especially difficult for Plaintiff to be away from his Mother, since he heavily relied upon her for assistance with everyday activities, such as reading, writing, and communication, which made being housed in the jail's "general population" quite difficult for him on a daily basis.

26.  Furthermore, because of Plaintiff's various disabilities, disorders, and handicaps, he always had difficulty making friends, socializing with others, and was often a target for bullying.  Thus, usually his only social interaction, while at jail, was when he could reach his Mother by the payphone in the hallway.

27.  Therefore, Plaintiff tried to speak with his Mother, on the telephone, three (3) to four (4) times a day, while he was detained, and she regularly visited him every week during visiting hours, at the Men's Central Jail.

**(November 2, 2019)**

**Plaintiff Suffered a Testicular Torsion and**

**His Testicle Swelled to the Size of Baseball**

7

SECOND AMENDED COMPLAINT

28.  Therefore, on Saturday, November 2, 2019, at approximately 10:40 a.m., Plaintiff's Mother went to visit him at the Men's Central Jail, as she usually did on the weekends.

29.  However, at this particular visit, Plaintiff's Mother noticed that Plaintiff walked into the room with an abnormal gait.  She also noticed that he was repeatedly adjusting himself as he was sitting-down and she immediately sensed that there was something wrong with her son.

30.  Plaintiff then explained to his Mother that he had woken-up that morning with pain and swelling in his testicles.  Plaintiff also told his Mother that he had never experienced any of these symptoms in the past.

31.  Plaintiff's Mother, who is a physician at Harbor-UCLA Medical Center and a professor of medicine at UCLA School of Medicine, told Plaintiff that it was the beginning stages of a partial or full testicular torsion, due to his young age, acute onset of symptoms, and history of undescended testicles as a child.

32.  A testicular torsion is when the testicle inverts or "flips" on itself and causes the blood vessels to "twist" and obstruct blood-flow to the testes, which requires immediate surgery to prevent the testicles from dying.

8
SECOND AMENDED COMPLAINT

33.  A testicular torsion is further characterized as excruciating pain and swelling.  It is one of the worst pains imaginable for a male to suffer and can leave him sterile and without viable testicles, within hours, if he does not receive emergency surgery to correct the torsion.

34.  A testicular torsion can occur randomly without any noticeable provocation, such as while sleeping, and is especially prone to occur in individuals who had a known history of suffering undescended testicles such as Plaintiff.

35.  Therefore, based on her medical training, knowledge of her son's health history, and clinical assessment of his presenting symptoms, Plaintiff's Mother told her son that he needed to seek immediate medical attention, since he was suffering from a testicular torsion and could lose his testicle.

36.  However, before ending the visitation, Plaintiff told his Mother that he wanted to seek the necessary medical attention on his own, without her help this time.

37.  This was because in the past, when his Mother would call the jail with medical concerns or complaints regarding her son, the staff responded by treating

9
SECOND AMENDED COMPLAINT

Plaintiff in a punitive and retaliatory manner, similar to "bullies" on the "playground."

38.  For instance, in the past, upon his mother calling the jail regarding her son's medical conditions, the jail staff would immediately make excuses for needing to "raid" Plaintiff's jail cell and confiscate his personal property and would sometimes send him to the "hole."

39.  These acts of retaliation were particularly difficult for Plaintiff since the staff would enter his jail cell and seize all of the books, food packages, and family pictures that his Mother and family would send him to help cope with life in jail.

40.  The jail staff would then explain to Plaintiff that he had too many possessions with him and seemed to indicate that they did not want him getting too comfortable while in custody.

41.  Therefore, due to this history with the jail staff, Plaintiff quickly ended the visitation, assured his Mother that he knew how to obtain medical attention, and promptly returned to his jail cell and requested a medical pass in order to seek treatment for his testicular torsion.

10
SECOND AMENDED COMPLAINT

42.  However, Plaintiff's request for a medical pass was ultimately denied by DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or the DOE Defendants, who comprised of jailers, deputies, staff, nurses, and medical personnel that were patrolling, monitoring, supervising, and responding to the 2000 cell block that day.

43.  Plaintiff then began experiencing increasing pain and swelling in his testicles and started pleading with DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants for a medical pass, as he explained that his symptoms and condition were worsening.

44.  However, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants continued to deny Plaintiff the emergency medical attention that he was requesting.

45.  After several repeated requests for a medical pass, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or the DOE Defendants falsely told Plaintiff that they "ran-out" of medical request forms and were unable to provide him with any medical care at that time.

11
SECOND AMENDED COMPLAINT

46.  They further told Plaintiff that they would take his name-down and get back to him later when they had more medical request forms available.

47.  Plaintiff was never given any alternative options, methods, or ways of accessing the necessary medical care and attention at the jail, which was especially concerning due to his current medical emergency.

48.  Meanwhile, Plaintiff continued to writhe in pain and even showed DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or the DOE Defendants, from the window of his jail cell, that his testicle had swollen to the size of a "baseball," in order to prove to them that he was in fact suffering from a legitimate medical emergency and condition.

49.  After witnessing Plaintiff's "baseball-sized" testicle, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or the DOE Defendants admitted that it appeared abnormal. However, they nevertheless refused to provide Plaintiff with any medical attention, as he continued to suffer in excruciating pain.

SECOND AMENDED COMPLAINT

50.  Meanwhile, Plaintiff's Mother, who was at home, sensed that something was wrong, since her son had not called her that day following the visitation.

51.  Typically, Plaintiff called his Mother immediately following any visitation in order to thank her for coming to see him.  Plaintiff then would call during the afternoon, night, and before bedtime which he normally did on a daily basis, since he missed having the immediate support of his family.

52.  As it turns out, Plaintiff's Mother's concerns were correct.  The reason that Plaintiff did not call her that day was because he was in too much pain to ever leave his jail cell and could not walk to the telephone down the hallway.

**(November 3, 2019)**

**Plaintiff Was Tortured by Jail Staff as They Watched Him**

**Writhe in Unimaginable Pain through the Window of His Jail Cell**

53.  The next day, on November 3, 2019, Plaintiff's pain and swelling had increasingly worsened.

54.  Plaintiff begged every jailer, deputy, nurse, and staff, who walked by his cell, for a medical pass, and explained his situation to them.  However, all of them continued to deny and ignore his medical requests and pleas for help.

SECOND AMENDED COMPLAINT

55.  Plaintiff then desperately told DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants that he was going to call, "man down," which is when a detainee shouts, "man down," to indicate that paramedics need to be summoned.

56.  However, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or the DOE Defendants told Plaintiff that his calls for "man down" would be ignored because this was not the proper way to obtain medical attention.  Meanwhile, Plaintiff continued to suffer in excruciating pain.

57.  Eventually, later that day, Plaintiff was provided a medical request form, but there was no one present to assist Plaintiff in reading, understanding, or writing the medical request form, and he could not walk to the telephone to call his Mother.

58.  Plaintiff nevertheless managed to immediately complete and turn-in the medical request form, stating all of his main symptoms, to the best of his ability, as he was never given an alternative method of requesting medical care.

14
SECOND AMENDED COMPLAINT

59.  However, despite finally obtaining and completing the medical request form, still no one at the jail ever brought Plaintiff to receive medical attention or care.

60.  Therefore, Plaintiff remained in his jail cell for the entire day, as he desperately continued to request medical attention from anyone who walked-by his cell window.

61.  However, Plaintiff's efforts were in vain as DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants merely watched Plaintiff writhe in agonizing pain, through his cell window, as they passed back and forth on patrol throughout the day.

**(November 4, 2019)**

**Plaintiff's "Baseball-Sized" Testicle Died**

62.  On Monday, November 4, 2019, Plaintiff eventually got the attention of a fellow detainee who was walking past his jail cell.  Plaintiff showed the detainee his swollen testicle and explained the situation to him.

63.  The fellow detainee observed Plaintiff's deteriorated condition, pain, and suffering and immediately went to seek medical attention for him.

15
SECOND AMENDED COMPLAINT

64.  Thereafter, one of the jail's staff came and escorted Plaintiff to the medical ward.  However, even at the medical ward, Plaintiff was nevertheless denied prompt medical attention from staff and nurses.

65.  When Plaintiff arrived at the medical ward, Plaintiff was told by a female nurse that he was a "walk-in" patient and that he needed to wait until the other patients, with scheduled medical appointments, were seen before they would attend to him.

66.  While Plaintiff waited, this nurse told Plaintiff that he needed to provide a urine sample.  However, Plaintiff told her that he could not walk because of his swollen testicle and the excruciating pain that he was experiencing.

67.  In response, the nurse indicated that without a urine sample, he would not receive any medical care.  Therefore, Plaintiff found a way to provide the urine sample, however, he still did not receive prompt medical attention.

68.  Instead, Plaintiff was then told by the nurse that he needed to walk down the hall to have his blood drawn.  Plaintiff further explained to the nurse that he could not walk down the hall due to his swollen testicle and substantial pain.

16
SECOND AMENDED COMPLAINT

69.  However, once again, the nurse told Plaintiff that unless he gave a blood sample, he would not receive any medical attention.

70.  Therefore, Plaintiff forced himself to walk down the hall to give a blood sample.  However, when he arrived, the phlebotomist inexplicably told Plaintiff that he was on his "lunch break" and that Plaintiff had to return later, despite the emergency symptoms that Plaintiff was displaying.

71.  After waiting for what seemed like several hours, Plaintiff broke-down and was left with no choice but to desperately reveal his "baseball" sized testicle to the nurse in one last attempt prove his legitimate medical emergency.  Upon the nurse witnessing his swollen testicle, Plaintiff was then transported to LAC-USC Medical Center.

72.  When Plaintiff arrived at LAC-USC Medical Center, he was brought to the emergency room to be examined.  Doctors then proceeded to take an ultrasound of his testicle and determined that there was no longer any blood flowing to it.

17
SECOND AMENDED COMPLAINT

73.  At this point, the doctors determined that Plaintiff's testicle had died and that it was no longer viable or functioning.  As such, Plaintiff was told that surgery would be performed electively the following day.

74.  Upon being told that doctors were going to remove his testicle, Plaintiff requested that the medical staff call his physician Mother, since he did not fully understand the doctors' diagnosis and the nature of the proposed surgery.

75.  Plaintiff also needed further assistance in understanding and completing the medical consent forms, due to his dyslexia and learning disabilities, and could not walk to the payphone at the end of the hallway to call his Mother.

76.  However, Plaintiff was told by the doctors, nurses, and medical staff that they would not call his Mother since he was an adult detainee and that they were not going to speak to her.

77.  Furthermore, the hospital, doctors, nurses, and medical staff did not provide Plaintiff with any assistance or accommodations in completing these informed consent forms despite his learning disabilities.

18
SECOND AMENDED COMPLAINT

78.   As a result, at around 9:00 p.m., Plaintiff forced himself to walk, in excruciating pain, to the end of the hallway, in order to use a payphone to call his Mother.

79.   During this emotional telephone call, Plaintiff's Mother learned for the first time about her son's pain and suffering over the course of the three (3) to four (4) days.

80.   However, due to the level of pain that Plaintiff was experiencing, he was unable to fully explain any details to his Mother.

81.   He also did not fully understand the circumstances of the surgery and his medical condition.

82.   Plaintiff's Mother attempted to contact the doctors, nurses, and medical staff at LAC-USC regarding her son's surgery and condition.  However, still none of them would speak to her.

83.   Plaintiff's Mother was crying and felt terrified, upset, and helpless in knowing that there was nothing she could do to help her son at that moment.

19
SECOND AMENDED COMPLAINT

84.  Plaintiff had not contacted her in days, which was highly unusual for him, and when he did, Plaintiff was in such agonizing pain that it simply broke his Mother's heart to learn about his current condition.

**(November 5, 2019)**

**Plaintiff's Testicle Was Surgically Removed**

85.  Therefore, on November 5, 2019, Plaintiff underwent surgery, otherwise known as an "orchiectomy," to remove his dead testicle, without first being able to consult with his physician Mother.

86.  Plaintiff was scared, confused, and in pain, but had the courage to undergo the surgery, without his Mother being present and despite being unaware of the exact circumstances surrounding his condition and the medical procedure.

87.  However, despite making it through the surgery, Plaintiff is now left with a single testicle, unimaginable trauma, and a list of future risks and health complications that will no doubt impact the rest of his life.

88.  For three (3) to four (4) days, prior to the day of surgery, Plaintiff suffered the most unimaginable physical pain that any person could experience without dying, due to DEPUTY YOVANNI GALINDO, DEPUTY ROBERT

20
SECOND AMENDED COMPLAINT

ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants' mistreatment of him.

89.  Plaintiff was scared, alone, tortured, embarrassed, humiliated, and degraded by DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants at the Men's Central Jail, who denied him emergency medical care and protection.

90.  Because of those actions, Plaintiff is now at risk of being sterile and unable to father children.

91.  Plaintiff's future intimate and familial relationships will suffer and he currently experiences significant embarrassment and humiliation, due to the mutilation of his body, personality, and self-image.

92.  Plaintiff already suffered substantial difficulties in socializing due to his mental, intellectual, and physical impairments.

93.  Throughout his life, Plaintiff never had any friends and was ostracized by peers.  Now with the loss of his testicle, Plaintiff has been left to feel like even more of an outcast, and with a worse self-image of himself.

21
SECOND AMENDED COMPLAINT

94.  Plaintiff is also at a higher risk of losing his other testicle to a subsequent torsion because of this incident.

95.  Moreover, Plaintiff's suffering could have been prevented had it not been for DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants' deliberate indifference to his medical condition, symptoms, and pain.

96.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants enjoyed watching Plaintiff in excruciating pain and intended for him to suffer the consequences of being denied prompt medical care simply because they were bullies and he was an easy "target."

97.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants knew that Plaintiff had several learning, mental, psychological, and physical disorders and handicaps, however, they were deliberately indifferent to his known and obvious medical needs, along with the necessary accommodations, monitoring, and understanding that should have been provided to him.

22
SECOND AMENDED COMPLAINT

98. With Plaintiff's obvious learning disabilities, medical conditions, and status as a pretrial detainee, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants felt that he would never be unable to report their misconduct and that no one would care. However, they were wrong about Plaintiff and he has now filed suit.

99. Accordingly, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and/or DOE Defendants and the COUNTY OF LOS ANGELES should be held accountable for their tortious misconduct and for Plaintiff's damages.

**COUNT 1**

**Denial of Prompt Medical Care in Violation of Plaintiff's Rights Under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983**

**[Alleged by Plaintiff Against DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOES 1 through 10]**

23
SECOND AMENDED COMPLAINT

100.  Plaintiff repeats and re-alleges each and every allegation, in Paragraphs 1 through 96 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

101.  Plaintiff hereby alleges this claim under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 against DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants.

102.  Plaintiff alleges that DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants failed to provide needed medical care and safe conditions of confinement.

103.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants made an intentional decision regarding the denial of needed medical care and the conditions under which Plaintiff was confined.

104.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants knew that

Plaintiff was suffering substantial pain, suffering, and swelling to his testicles from December 2, 2020 to December 5, 2020.

105.  From his jail cell, while pleading for medical attention, Plaintiff showed DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants his swollen testicle which had grown to the size of a "baseball," which Defendants acknowledged was abnormal.

106.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants repeatedly denied Plaintiffs requests for a medical pass from December 2, 2020 to December 3, 2020, despite witnessing his emergency symptoms and baseball-sized testicle.

107.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants also lied to Plaintiff by telling him that they ran-out of medical request forms and therefore they could not take him for medical attention, until they obtained additional medical request forms.

108.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants also denied

25
SECOND AMENDED COMPLAINT

Plaintiff's calls for "man down" which would require them to provide emergency medical attention, as was the customary practice at the Men's Central Jail.

109.  Instead, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants told Plaintiff that he needed to go through the medical request form process and that his calls for "man down" would be denied, even despite claiming that it was impossible to comply with this medical request form system, since DOE Defendants claimed that there were no more medical request forms available.

110.  After Plaintiff was eventually given a medical request form to complete, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants refused to bring Plaintiff to the medical ward for medical care.  Instead, they continued to watch him writhe in pain from his jail cell window.

111.  The next day, when Plaintiff was eventually brought to the medical unit, the nurses and medical staff did not provide him with immediate medical attention despite his emergency symptoms.

SECOND AMENDED COMPLAINT

112.  Instead, the nurses, medical professionals, deputies, and staff acted in a punitive manner towards Plaintiff by making him walk around the unit in pain, proceed with unnecessary and punitive urine and blood tests, wait until staff returned from lunch, and threatened to further deny him medical care unless he complied with all of these conditions.

113.  This denial of needed medical care and conditions of confinement put Plaintiff at substantial risk of suffering serious harm which he in fact experienced while detained at the Men's Central Jail.

114.  Particularly, Plaintiff ultimately suffered the death of his testicle which needed to be surgically removed.  He is now left with only one testicle and an increased risk of sterility and future testicular torsions.

115.  During these incidents, Plaintiff suffered the most unimaginable, excruciating pain, over the course of three (3) to four (4) days, while DOE Defendants continued to deny him medical care as he begged them for help.

116.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants did not take reasonable available measure to abate or reduce the risk of serious harm to

27
SECOND AMENDED COMPLAINT

Plaintiff, even though a reasonable officer under the circumstances would have understood the high degree of risk involved, thereby making the consequences of DOE Defendants' conduct obvious.

117.   Under these circumstances, the DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants' conduct was objectively unreasonable.  One does not even need to be a trained officer, medical personnel, or jailer in order to recognize that Plaintiff needed emergency medical attention.  This is the reason that a fellow detainee, who walked-by Plaintiff's jail cell, was able to recognize and appreciate his medical emergency and summoned staff to eventually assist Plaintiff.

118.   Therefore, by failing to take prompt measures, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants actually and proximately caused Plaintiff's loss of his testicle, injuries, pain and suffering, mental and psychological anguish, emotion distress, life-long trauma and embarrassment, and humiliation.

119.   Accordingly, Plaintiff seeks an award of general, special, economic, non-economic, compensatory, and non-compensatory damages

SECOND AMENDED COMPLAINT

120.  Plaintiff further seeks an award of reasonable attorney fees and costs pursuant to section 42 U.S.C. § 1988.

121.  Plaintiff additionally seeks an award of punitive damages since DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants' foregoing conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights, which ultimately caused him to lose his testicle and experience substantial pain, suffering, mental anguish, and psychological distress.

122.  Under the circumstances, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants' conduct reflected complete indifference to the Plaintiff's safety and/or rights, when they allowed Plaintiff to suffer for days, in his jail cell, as he pleaded for medical attention for his obvious testicular torsion.

123.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants also acted in the face of a perceived risk that the actions will violate Plaintiff's rights under federal law as they knew that Plaintiff had a right to medical care, but nevertheless denied

29
SECOND AMENDED COMPLAINT

him such attention, despite having reason to know that Plaintiff's testicle swelled to the size of a "baseball."

124.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants injured, damaged, and/or otherwise violated the rights of Plaintiff with unnecessary harshness or severity, when they allowed Plaintiff to suffer for days in excruciating pain, while they ignored his pleas for help.

125.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants misused and/or abused their authority or power and took advantage of Plaintiff's weakness, disability or misfortune.  Plaintiff was confined as a pretrial detainee, had several physical and mental health problems, was currently suffering from a testicular torsion.  However, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOE Defendants used these factors to take advantage of Plaintiff's vulnerable state and cause him to suffer.

//

//

SECOND AMENDED COMPLAINT

**COUNT 2**

**Failure to Protect a Pretrial Detainee Under the Fourteenth Amendment to**

**the Constitution of the United States and 42 U.S.C. § 1983**

**[Alleged by Plaintiff Against Defendants, DEPUTY YOVANNI GALINDO,**

**DEPUTY ROBERT ARCHULETA, and DOES 1 through 10]**

126.  Plaintiff repeats and re-alleges each and every allegation, in Paragraphs 1 through 122 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

127.  Plaintiff alleges DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants deprived him of his rights under Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, when they deliberately denied him emergency medical care while he was suffering a testicular torsion in his jail cell.

128.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants made an intentional decision with respect to the conditions under which the Plaintiff was confined.

31
SECOND AMENDED COMPLAINT

129.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants decided to confine Plaintiff in a jail cell, deny his access to the medical ward, and prevent him from obtaining emergency medical care, while knowing that he was suffering a medical emergency and failed to protect him against the harm that would result from the medical emergency.

130.  As part of the conditions of his confinement, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants controlled whether, when, and under what circumstances that Plaintiff received medical and/or emergency care and attention, could enter the medical ward, or be seen by a medical health professional.

131.  As part of the conditions of his confinement, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants did not allow Plaintiff access to medical request forms or would accept a call for "man-down" which are both customary practices for obtaining medical care at the jail.

132.  As part of the conditions of his confinement, Plaintiff was not provided with the resources or assistance to addressing his learning disabilities, physical illnesses, mental disorders, and medical conditions during an emergency situation.

133.  As part of the conditions of his confinement, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants further controlled whether, when, and under what circumstances that Plaintiff could leave his jail cell throughout the day, enter the medical ward, or speak to medical health professionals.

134.  As part of the conditions of his confinement, Plaintiff was unable to leave his locked cell without the permission, approval, direction, and assistance of DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants, throughout the day.

135.  Ultimately, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants ultimately refused to allow Plaintiff the necessary conditions that would protect him from harm or assist him in receiving medical care for his testicular torsion.

136.  These conditions of confinement put the Plaintiff at substantial risk of suffering serious harm.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants' failure to protect Plaintiff placed him in a

position where he was unable to obtain emergency medical care in order to save

his testicle and to prevent his days of agonizing pain and suffering.

137.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT

ARCHULETA, and DOE Defendants did not take reasonable available measures

to abate that risk of serious harm, even though a reasonable officer under the

circumstances would have appreciated the high degree of risk involved thereby

making the consequences of the DOE Defendants' misconduct obvious.

138.  Any reasonable jailer, deputy, staff, nurse, or attendee would have

appreciated the high risk of harm to Plaintiff, as they witnessed his testicle which

swelled to the size of "baseball," noted its abnormal appearance, observed his pain

and suffering, and acknowledged his pleas for medical help.

139.  Under these circumstances, it was objectively unreasonable for

DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE

Defendants to allow Plaintiff to writhe in pain for days, before a fellow detainee

walked-by and convinced a staff member to finally bring Plaintiff to the medical

ward because of his deteriorated condition and state.

140.  By not taking such measures, the DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants actually and proximately caused Plaintiff's injuries.  Had DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants attempted to protect Plaintiff from harm, Plaintiff's testicle could have been saved and the psychological and emotional distress, pain and suffering, and embarrassment and humiliation could have been avoided.

141.  Accordingly, Plaintiff seeks general, special, economic, non-economic, compensatory, and non-compensatory damages

142.  Plaintiff further seeks reasonable attorney fees and costs pursuant to section 42 U.S.C. § 1988.

143.  Plaintiff additionally seeks an award of punitive damages since DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants' foregoing conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights, which ultimately caused him to lose his testicle and experience substantial pain, suffering, mental anguish, and psychological distress.

144.  Under the circumstances, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants' conduct reflected complete indifference to the Plaintiff's safety and/or rights, when they allowed Plaintiff to suffer for days, in his jail cell, as he pleaded for medical attention for his obvious testicular torsion.

145.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants also acted in the face of a perceived risk that the actions will violate Plaintiff's rights under federal law as they knew that Plaintiff had a right to medical care, but nevertheless denied him such attention, despite having reason to know that Plaintiff's testicle swelled to the size of a "baseball."

146.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants injured, damaged, and/or otherwise violated the rights of Plaintiff with unnecessary harshness or severity, when they allowed Plaintiff to suffer for days in excruciating pain, while they ignored his pleas for help.

147.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants misused and/or abused their authority or power and took advantage of Plaintiff's weakness, disability or misfortune. Plaintiff was confined as a pretrial detainee, had several physical and mental health problems, was currently suffering from a testicular torsion.  However, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants used these factors to take advantage of Plaintiff's vulnerable state and cause him to suffer.

## COUNT 3

**Municipal and Supervisorial Liability in Violation of Plaintiff's Rights Under the Fourteenth and Eighth Amendments to the Constitution of the United States and 42 U.S.C. § 1983**

**[Alleged by Plaintiff Against Defendant, COUNTY OF LOS ANGELES]**

148.  Plaintiff, RYAN VINTCH, repeats and re-alleges each and every allegation, in Paragraphs 1 through 145 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

149.  Plaintiff alleges that the express policies and/or widespread and/or longstanding customs and practices of Defendant, COUNTY OF LOS ANGELES,

SECOND AMENDED COMPLAINT

actually and proximately caused Plaintiff's damages, including but not limited to, the deprivation of his Fourteenth Amendment Rights, when DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Officers denied him prompt medical care and failed to protect him from harm, for which Defendant, COUNTY OF LOS ANGELES, is directly liable.

150.  As previously alleged, Defendants conduct violated Plaintiff's Right to Medical Care when they observed his pain and suffering, obvious emergency medical symptoms, swollen testicle that was the size of a "baseball," and his repeated requests and pleas for medical attention.

151.  Instead of seeking prompt medical care for Plaintiff, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and the DOE Defendants continued to confine him to his jail cell, without any medical attention, for three (3) to four (4) days.

152.  During this time, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants continued to observe Plaintiff writhe in agonizing pain, due to a testicular torsion, that eventually led to his testicle dying and requiring surgery to remove on the fifth (5th) day.

153.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants further had a duty to protect Plaintiff from

38
SECOND AMENDED COMPLAINT

harm and intentionally controlled the conditions of his confinement at the Men's

Central Jail, which caused Plaintiff to suffer substantial injuries.

154.  As part of his conditions of confinement, DEPUTY YOVANNI

GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants determined

whether, when, how, and under what circumstances Plaintiff would ultimately

receive medical attention or be taken to the medical ward.

155.  Due to these conditions of confinement, DEPUTY YOVANNI

GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants caused

substantial harm to Plaintiff and failed to take appropriate measures to abate any

such risks, when any reasonable county employee, under the circumstances, would

have appreciated the potential consequences involved and sought prompt medical

attention for him.

156.  When DEPUTY YOVANNI GALINDO, DEPUTY ROBERT

ARCHULETA, and DOE Defendants denied medical care to Plaintiff and failed to

protect him from harm, they either acted pursuant to an expressly adopted official

policy or a widespread or longstanding practice or custom of Defendant, COUNTY

OF LOS ANGELES, or were the product of the foregoing, which encouraged,

supported, tolerated, condoned, protected, and promoted such misconduct.

39<br>SECOND AMENDED COMPLAINT

157.  Specifically, Defendant, COUNTY OF LOS ANGELES, maintains official policies and/or widespread and/or longstanding practices or customs of:

a.  Requiring detainees to strictly adhere to a medical pass or request system even in emergency situations;

b.  Restricting or obstructing access to the medical pass or request forms when a detainee is sick or injured;

c.  Restricting access to the medical pass or request forms when the detainee is confined to their jail cell and is unable to obtain the medical request forms;

d.  Not stocking the jail with enough accessible medical request forms for the detainees to use;

e.  Requiring detainees to first obtain a medical "pass," which is vetted by non-medical personnel, prior to being brought to the medical unit;

f.  Not having a backup medical request protocol for when the medical pass system fails or in the event that there are no more medical request forms;

SECOND AMENDED COMPLAINT

g.  Failing to train deputies, staff, jailers, and nurses when to detect emergency medical symptoms and the actions to take when such conditions are observed;

h.  Maintaining a vetting process of medical pass requests that is determined, evaluated, and vetted by non-medical professionals who determine the level of severity, necessity for medical care, and whether it is an emergency or non-emergency;

i.  Failing to have medically or emergency trained employees monitoring the detainees who can recognize the symptoms of a medical emergency and have the authority and ability to either render medical care or summon others who can promptly treat a detainee;

j.  Maintaining a "man-down" system of shouting for medical attention which is arbitrarily applied and places the determination of whether a person is presenting emergency systems in the hands of non-medically trained employees, such as jailers, deputies, and staff;

41
SECOND AMENDED COMPLAINT

k.  No process for transporting or escorting detainees who are unable to walk to the medical ward or leave their jail cell due to their sickness, injuries, or pain;

l.  No system of bringing medically trained professionals to the jail cells in order to evaluate detainees complaining of serious medical conditions, symptoms, or injuries;

m. No assistance for learning or physically disabled detainees in reading, completing, seeking, and writing medical request forms along with informed consent forms;

n.  No alternative process, method, means, option, or way for a disabled or handicapped person to access, seek, obtain, and request medical attention and care at the jail other than to strictly adhere to the medical pass system that presented various barriers;

o.  No process at the medical ward for triaging or prioritizing medical patients, conditions, appointments, and cases due to the severity of the symptoms that are presenting;

42
SECOND AMENDED COMPLAINT

p.  Requiring walk-in patients at the medical ward to be seen following the scheduled patients regardless of the severity of symptoms and conditions presenting;

q.  Maintaining a system where "walk-in" patients are not allowed to receive priority over scheduled patients;

r.  Inadequate vetting, assessing, and recording of patient symptoms when patients first arrive at the medical ward in order to assist in triaging and determining time sensitive or emergency situations;

s.  Requiring that patients at the medical ward provide a urine and blood sample regardless of their presenting symptoms before they will be seen by a medical professional or treated;

t.  Not providing any assistance to sick, injured, and disabled persons who are unable to walk and navigate the medical ward or jail facility due to their injury;

u.  No disciplinary system for employees who deny medical care to detainees or failing to protect them from harm;

43
SECOND AMENDED COMPLAINT

v.  Failing to create a "paper trail" of county employee misconduct by systemically rejecting citizen complaints at the early stages of an internal affairs or department investigation;

w.  Failing to adequately investigate incidents where county employees have been accused of misconduct and violating civil rights of persons within the community;

x.  Assigning problem county employees who "work in gray" to reject the claims of county employee misconduct during the initial stages of an internal affairs or department/agency investigation;

y.  Assigning problem employees who are the subject of internal affairs investigations to the Department of Internal Affair while the investigation is pending;

z.  Reassigning problem county employees to administrative duties or allowing them take "time off" in order to avoid any suspensions or discipline on their records;

aa. Maintaining vague, ambiguous, and biased records that do not properly, adequately, or accurately apprise others of the county employee's past misconduct;

bb. Failing to internally investigate any cases that are pending litigation which usually relate to the most serious forms of county employee misconduct;

cc. Failing to internally investigate claims that have not been internally filed but were externally reported or known by the County and its Departments;

dd. Hiding behind settlements, general releases, and "no fault admissions" related to lawsuits or government claims;

ee. Transferring, relocating, and/or promoting county employees or allowing them to resign prior any internal investigation completing or taking place;

ff. Failing to adequately flag problem county employees within the department;

gg. Failing to adequately retrain problem county employees within the County's Departments;

hh. Failing to properly discipline, suspend, or terminate problem county employees within the department;

ii. Transferring, moving, and/or relocating its problem county employees to various departments, stations, divisions, and positions in order to

45
SECOND AMENDED COMPLAINT

essentially "bury," ignore, dilute, hide, and spread these problem

county employees, along with their incidents of misconduct, to other

County Departments, and to evade internal, disciplinary, and other

investigations;

jj. Allowing its county employees to participate in "renegade," "gang-like," cliques, which facilitate, conspire, promote, organize, encourage, and commit acts of police brutality, aggressive police tactics, and officer misconduct.

kk. Allowing acts of excessive force to be committed against suspects, inmates, or defendants, in order for a county employee to gain membership into one of these renegade gang-like cliques;

ll. Allowing Officers to formalize their membership into these renegade cliques with a "tattoo" that signifies that this particular Officer has "earned his ink;"

mm.      Allowing Officers to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence," or "blue code," regarding these unconstitutional abuses in order to protect members, recruit younger deputies, and earn promotions;

46
SECOND AMENDED COMPLAINT

nn. Allowing these secret societies of tattooed deputies in the County of Los Angeles to continue operating despite the FBI investigating these renegade cliques.

158. Defendant, COUNTY OF LOS ANGELES, along with its Police Chiefs and Police Department(s), which ratify, adopt, condone, comply, and follow these policies, customs, and practices, are aware of the problems and the constitutional violations that they are causing.

159. Ultimately, these official policies and/or widespread, longstanding practices or customs of Defendant, COUNTY OF LOS ANGELES, are so closely related to the deprivation of Plaintiff's Fourteenth Amendment Rights, that they were the moving force that caused his injuries.

160. Plaintiff would not have sustained his injuries had Defendant, COUNTY OF LOS ANGELES, maintained constitutional practices and safeguards to prevent the continuous acts of denying medical care and failing to protect detainees, by its employees, in violation of the Fourteenth Amendment.

161. As a result, Plaintiff experienced physical injuries, emotional and psychological distress, pain and suffering, physical injuries, humiliation and

47
SECOND AMENDED COMPLAINT

embarrassment, fears for his health, wellbeing, and safety, general damages, and special damages in an amount to be proven at trial.

162.  Plaintiff further claims attorney fees and legal costs pursuant to 42 U.S.C. § 1988, under this claim of relief.

## COUNT 4

### Deliberate Infliction of Emotional Distress

### [Alleged by Plaintiff Against Defendants, COUNTY OF LOS ANGELES, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, and DOES 1 through 10]

163.  Plaintiff, RYAN VINTCH, repeats and re-alleges each and every allegation, in Paragraphs 1 through 159 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

164.  Plaintiff claims that DEPUTY YOVANNI GALINDO and DEPUTY ROBERT ARCHULETA, along with Staff and Custody Personnel, Shronda A. Mayberry, Rivera, A., Hernandez, S., C/A Ruelas, E, C/A Jenkins, M., Pedraza, C., Tr. Chhuor, M., C/A Palomino, C., Montes De Oca, J., C/A Lorenzano, G., D'Souza, G., C/A Gutierrez, A., Calmo, J., C/A Jimenez Vega, R., Peters, T., T/O Chen, A., C/A Lin, H., C/A Ochoa, N., Chhan, D., Ruiz, A., Espinoza, R., C/A

Landa, J., Montes De Oca, J., C/A Lorezano, G., Ramirez-Magana, J., Aguilar, L., Dare, T., Quiblat, R., Gonzales, C., A., Kladifko, Lavenant, O., Venegas, M., C/A Esparza, J., Soto Cruz, A., Tr. Lopez, S., Jones, D., Lomeli-Rocha, C., Martinez-Barajas, A, and DOE Defendants' outrageous conduct caused him to suffer severe emotional distress.

165.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' conduct was outrageous since they intentionally withheld emergency medical care to Plaintiff, for three (3) to four (4) days, as they watched him writhe in pain, through the window of his locked jail cell.

166.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' observed that Plaintiff's testicle had swollen to the size of a "baseball" and that he was experiencing agonizing pain and suffering for which he was pleading for DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, "Staff and Custody Personnel," and DOE Defendants for help.

49
SECOND AMENDED COMPLAINT

167.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' denial of medical care and attention to Plaintiff caused him to lose his testicle, to experience substantial pain and suffering, and to suffer psychological effects from this traumatizing experience.

168.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' conduct was so extreme that it exceeded all bounds that are usually tolerated in a civilized community.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants tortured Plaintiff, who was under their custody and control, and denied him emergency medical care which is conduct that is never tolerated in the United States.

169.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' intended to cause Plaintiff emotional distress as demonstrated by their refusal to provide him with emergency medical care when they observed him

in excruciating pain, for three (3) to four (4) days, as he pleaded for help due to his testicular torsion.

170.  Plaintiff suffered severe emotional distress as demonstrated by his pain and suffering that was witnessed by DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants.  This is further shown by the psychological and emotional distress, embarrassment, trauma, and humiliation that Plaintiff endured and continues to experience.

171.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' conduct was a substantial factor in actually and foreseeably causing Plaintiff's severe emotional distress.  Had DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants brought Plaintiff to receive immediate medical care and attention, when he had first complained of his symptoms, revealed his swollen testicle, and experienced substantial pain and

suffering, then he would not have experienced the same degree of emotional and psychological distress that he ultimately endured and continues to suffer.

172.  Defendant, COUNTY OF LOS ANGELES, is vicariously liable for the wrongful acts of Defendants, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOES 1 through 10, pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment, if the employee's act would subject him or her to liability.

173.  Accordingly, Plaintiff seeks general, special, economic, non-economic, compensatory, and non-compensatory damages, along with reasonable attorney fees and costs.

174.  Plaintiff additionally seeks an award of punitive damages since DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' foregoing conduct was malicious, oppressive, or in reckless disregard of Plaintiff's

rights, which ultimately caused him to lose his testicle and experience substantial pain, suffering, mental anguish, and psychological distress.

175.   Under the circumstances, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants' conduct reflected complete indifference to the Plaintiff's safety and/or rights, when they allowed Plaintiff to suffer for days, in his jail cell, as he pleaded for medical attention for his obvious testicular torsion.

176.   DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants also acted in the face of a perceived risk that the actions will violate Plaintiff's rights under federal law as they knew that Plaintiff had a right to medical care, but nevertheless denied him such attention, despite having reason to know that Plaintiff's testicle swelled to the size of a "baseball."

177.   DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants injured, damaged, and/or otherwise violated the rights of Plaintiff

with unnecessary harshness or severity, when they allowed Plaintiff to suffer for days in excruciating pain, while they ignored his pleas for help.

178.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants misused and/or abused their authority or power and took advantage of Plaintiff's weakness, disability or misfortune.  Plaintiff was confined as a pretrial detainee, had several physical and mental health problems, was currently suffering from a testicular torsion.  However, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, SHRONDA MAYBERRY, Staff and Custody Personnel, and DOE Defendants used these factors to take advantage of Plaintiff's vulnerable state and cause him to suffer.

## COUNT 5

## Negligence

**[Alleged by Plaintiff Against Defendants, COUNTY OF LOS ANGELES, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOES 1 through 10]**

54
SECOND AMENDED COMPLAINT

179.  Plaintiff, RYAN VINTCH, repeats and re-alleges each and every allegation, in Paragraphs 1 through 175 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

180.  Plaintiff claims that he was harmed by DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, and DOE Defendants, and by "Custody Personnel," Rivera, A., Hernandez, S., C/A Ruelas, E, C/A Jenkins, M., Pedraza, C., Tr. Chhuor, M., C/A Palomino, C., Montes De Oca, J., C/A Lorenzano, G., D'Souza, G., C/A Gutierrez, A., Calmo, J., C/A Jimenez Vega, R., Peters, T., T/O Chen, A., C/A Lin, H., C/A Ochoa, N., Chhan, D., Ruiz, A., Espinoza, R., C/A Landa, J., Montes De Oca, J., C/A Lorezano, G., Ramirez-Magana, J., Aguilar, L., Dare, T., Quiblat, R., Gonzales, C., A., Kladifko, Lavenant, O., Venegas, M., C/A Esparza, J., Soto Cruz, A., Tr. Lopez, S., Jones, D., Lomeli-Rocha, C., Martinez-Barajas, A, who were negligent in performing their duties.

181.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants had a duty to protect and summon prompt medical care for Plaintiff, who was in their custody and care,

when they observed his obvious medical symptoms, pain and suffering, his "baseball" size testicle, and repeated pleas for medical assistance and care.

182.  Any reasonable jailer, deputy, nurse, medical staff, or jail staff, under these circumstances, would have realized that Plaintiff needed immediate medical attention and would have promptly taken him to the medical ward or to summon paramedics to the jail cell.

183.  Any reasonable jailer, deputy, nurse, medical staff, or jail staff, under these circumstances, would have further realized that Plaintiff could suffer medical complications and the loss of his testicle, if he did not receive prompt medical attention.

184.  Furthermore, during this time, the Men's Central Jail was experiencing a severe mumps outbreak which could lead to testicular pain.  Therefore, Plaintiff's symptoms would have caused a reasonable jailer, deputy, nurse, medical staff, or jail staff to screen and quarantine Plaintiff for mumps, which would have ultimately revealed his testicular torsion.

185.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants also had a duty to

monitor, supervise, and oversee Plaintiff's condition, behavior, safety, health, and wellbeing, while under their custody and control, especially in case Plaintiff suffered an emergency medical condition, in his jail cell.

186.   Any reasonable jailer, deputy, nurse, medical staff, or jail staff, under the circumstances, who was tasked with monitoring, supervising, and overseeing Plaintiff's cell block, would have noticed that his failure to leave his jail cell for three (3) to four (4) was a sign for concern.

187.   Any reasonable jailer, deputy, nurse, medical staff, or jail staff, under the circumstances, who was tasked with monitoring, supervising, and overseeing Plaintiff's cell block, would not have failed to check-on Plaintiff or notice that he was suffering from substantial pain to his testicular region.

188.   Any reasonable jailer, deputy, nurse, medical staff, or jail staff, under the circumstances, who was tasked with monitoring, supervising, and overseeing Plaintiff's cell block, would not have left Plaintiff in this state, for three (3) to four (4), upon passing by his jail cell window multiple times throughout the day.

189.   Any reasonable jailer, deputy, nurse, medical staff, or jail staff, under the circumstances, who was tasked with monitoring, supervising, and overseeing

57
SECOND AMENDED COMPLAINT

Plaintiff's cell block, would not have failed to realize that repeated requests for medical request forms could indicate a serious medical emergency, and that a baseball sized testicle was a sign for immediate concern.

190.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants breached their duties and/or standards of care when they deliberately denied Plaintiff medical care for three (3) to four (4) days as they watched him writhe in agonizing pain through the window of his jail cell.

191.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants breached their duties and/or standards of care when they failed to monitor, supervise, and oversee Plaintiff's condition, behavior, safety, health, and wellbeing, while he was under their custody and control, on the cell block, whereby he suffered a medical emergency for three (3) to four (4) days, as DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants walked by his jail cell throughout the day.

58
SECOND AMENDED COMPLAINT

192.   DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants breached their duties and/or standards of care when they either failed to notice, or noticed but failed to take immediate action, the inability and/or failure of Plaintiff to leave his jail cell for three (3) to four (4) days; inability to walk without discomfort; repeated requests for medical attention and forms; baseball sized testicle; and substantial suffering for three (3) to four (4) days in his jail cell.

193.   Plaintiff was harmed by DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants whose actions were a substantial factor in actually and foreseeably causing him to lose his testicle, undergo surgery, experience substantial pain and suffering, endure significant emotional and psychological distress, and continue to suffer embarrassment, humiliation, and self-consciousness, along with increased risks for sterility, future testicular torsions, and surgery.

194.   Defendant, COUNTY OF LOS ANGELES, is vicariously liable for the wrongful acts of Defendants, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOES 1 through 10, pursuant to

section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment, if the employee's act would subject him or her to liability.

195.  Accordingly, Plaintiff seeks general, special, economic, non-economic, compensatory, and non-compensatory damages, along with reasonable attorney fees and costs.

196.  Plaintiff additionally seeks an award of punitive damages since DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants' foregoing conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights, which ultimately caused him to lose his testicle and experience substantial pain, suffering, mental anguish, and psychological distress.

197.  Under the circumstances, DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants' conduct reflected complete indifference to the Plaintiff's safety and/or rights, when they allowed Plaintiff to suffer for days, in his jail cell, as he pleaded for medical attention for his obvious testicular torsion.

60
SECOND AMENDED COMPLAINT

198.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants also acted in the face of a perceived risk that the actions will violate Plaintiff's rights under federal law as they knew that Plaintiff had a right to medical care, but nevertheless denied him such attention, despite having reason to know that Plaintiff's testicle swelled to the size of a "baseball."

199.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants injured, damaged, and/or otherwise violated the rights of Plaintiff with unnecessary harshness or severity, when they allowed Plaintiff to suffer for days in excruciating pain, while they ignored his pleas for help.

200.  DEPUTY YOVANNI GALINDO, DEPUTY ROBERT ARCHULETA, Custody Personnel, and DOE Defendants misused and/or abused their authority or power and took advantage of Plaintiff's weakness, disability or misfortune.  Plaintiff was confined as a pretrial detainee, had several physical and mental health problems, was currently suffering from a testicular torsion.

61
SECOND AMENDED COMPLAINT

However, DOE Defendants used these factors to take advantage of Plaintiff's vulnerable state and cause him to suffer.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, RYAN VINTCH, respectfully requests entry of judgement, in his favor, against Defendants as follows:

a) For general damages in an amount to be proven at trial;

b) For special damages in an amount to be proven at trial;

c) For punitive damages in an amount to be proven at trial;

d) For interests at the time of trial;

e) For an award of reasonable attorney fees as to Plaintiff's federal civil rights claims pursuant to 42 U.S.C. § 1988.

f) For an award of reasonable attorney fees as to Plaintiff's Americans with Disability Act claim pursuant to 42 U.S.C. § 12205;

g) For an award of reasonable attorney fees as to Plaintiff's Rehabilitation Act claim pursuant to 29 U.S.C. 794(a);

h) For an award of litigation costs and expenses;

i) For any other equitable and legal relief that the Court deems just, proper, and appropriate.

Date: 07/19/21                    THE OUCHI LAW FIRM, A.P.C.

62

SECOND AMENDED COMPLAINT

By.:   *Wesley G. Ouchi /s/*
      **WESLEY G. OUCHI**

SECOND AMENDED COMPLAINT

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2

3
Plaintiff, RYAN VINTCH, hereby respectfully demands a trial by jury in

4
this matter.

5

6
Date:  07/19/21                    THE OUCHI LAW FIRM, A.P.C.

7
By.:    *Wesley G. Ouchi /s/*

8
         **WESLEY G. OUCHI**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SECOND AMENDED COMPLAINT